1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

HOUSTON POWELL,                    )        3:10-cv-619-ECR (RAM)
                                   )
            Plaintiff,             )        **REPORT AND RECOMMENDATION**
                                   )        **OF U.S. MAGISTRATE JUDGE**
      vs.                          )
                                   )
GREGORY SMITH, et al.,             )
                                   )
            Defendants.            )
_____   )

       This Report and Recommendation is made to the Honorable Edward C. Reed, Jr.,
Senior United States District Judge. The action was referred to the undersigned Magistrate
Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before
the court is Defendants' Motion to Dismiss. (Doc. #26.)[1] Plaintiff has opposed (Doc. #29) and
Defendants have replied (Doc. # 30). After a thorough review, the court recommends that the
motion be granted without prejudice.

                                **I. BACKGROUND**

       At all relevant times, Plaintiff Houston Powell (Plaintiff) was in custody of the Nevada
Department of Corrections (NDOC) as an inmate at Nevada State Prison (NSP). (Pl.'s Sec. Am.
Compl. 3 (Doc. # 11).) Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Defendants
are NDOC and various NDOC officials, administrators, and employees. (*Id.* at 3-6.)

       Plaintiff alleges that he was verbally assaulted by another inmate, Raymond Bynum, at
NSP on October 2, 2008. (Doc. # 11 at ¶¶ 20-21.) According to Plaintiff, as a result of this
incident, inmate Bynum was escorted from the unit to the infirmary for a mental health

_____

[1] Refers to court's docket number.

evaluation. (*Id.* at ¶¶ 22-27.) Approximately forty minutes later, inmate Bynum walked back into the unit and went to Plaintiff's cell and physically attacked Plaintiff. (*Id.* at ¶¶ 28-33.) Correctional officers arrived to pull inmate Bynum off of Plaintiff, and he suffered additional injuries. (*Id.* at ¶¶ 34-35.) Plaintiff was transferred to the infirmary for treatment. (*Id.* at ¶¶ 37-38.) After being treated, Plaintiff was handcuffed and escorted one-quarter mile away to a disciplinary unit where he was placed on 24-hour lock down. (*Id.* at ¶¶ 39.) Plaintiff alleges that in lock down he began experiencing extreme pain and discomfort from his injuries, but his requests for medical care were refused or ignored. (*Id.* at ¶¶ 40-42.) Plaintiff alleges that it took months to have x-rays taken, and he continued to experience severe pain and modified mobility. (*Id.* at ¶¶ 43-50.)

Plaintiff asserts various causes of action related to Defendants' handling of inmate Bynum, the treatment of his injuries, as well as state law claims for negligence and negligent training and supervision of prison employees, and assault and battery. (Doc. # 11.)

Defendants move to dismiss because Plaintiff has failed to exhaust the available administrative remedies. (Defs.' Mot. to Dismiss (Doc. #26).)

## II.  LEGAL STANDARD

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).   The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

2

1    This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth
2  two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is
3  fully addressed on the merits by the administrative agency and appealed through all the
4  agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical
5  procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).
6  "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.
7  Defendants must show that Plaintiff failed to meet both the merits and compliance tests to
8  succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

9    The failure to exhaust administrative remedies is treated as a matter in abatement and
10 is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108,
11 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative
12 remedies is an affirmative defense, and defendants bear the burden of raising and proving
13 failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt*, 315 F.3d at 1119. A court,
14 in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide
15 disputed issues of fact without converting the motion into one for summary judgment. *Id.*
16 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir.
17 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust
18 nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at
19 1120.

20    For prisoners within the NDOC system, exhaustion of administrative remedies requires
21 complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation
22 740 (AR 740). (Doc. # 26 at 3, Ex. A.) The administrative process consists of: (1) an informal
23 level grievance that is reviewed and responded to by an inmate caseworker; (2) a first level
24 formal written grievance appealing the informal grievance decision to the warden at the
25 institution where incident being grieved occurred; and (3) a second level grievance appealing
26 the first level grievance decision. (AR 740.02.1.1.1 (Doc. # 26 at 14).) If an inmate disagrees
27 with the response to any grievance, he may appeal the grievance to the next available level

28

1   within the prescribed deadlines.  (AR 740.02.1.1.1.4 (Doc. # 26 at 15).)  Inmates may use the

2   grievance process to resolve claims including, personal property, property damage, disciplinary

3   appeals, personal injuries, and any other tort claim or civil rights claim relating to conditions

4   of institutional life. (AR 740.02.1.2.1 (Doc. # 26 at 15).) For claims involving personal property

5   damage or loss, personal injury, medical claims or other tort claims, including civil rights

6   claims, the inmate shall file an informal grievance within six calendar months.   (AR

7   740.02.1.4.1.1 (Doc. # 26 at 17).)  Failure to submit a proper informal grievance form within the

8   prescribed time frame shall constitute abandonment of the inmate's right to pursue resolution

9   of that claim at any level of inmate grievance procedure.  (AR 740.02.1.4.1.2 (Doc. # 26 at 17).)

10                                **III. DISCUSSION**

11         Defendants argue that Plaintiff has failed to exhaust his administrative remedies with

12   respect to any claim asserted in the Second Amended Complaint.  (Doc. # 26 at 3- 6, Ex. B.)

13   Defendants submit the declaration of Silvia Garcia, Administrative Aide II to the Associate

14   Warden of Programs at NSP, who conducted a search for grievances that may have been filed

15   by Plaintiff between January 2008 and February 14, 2011, and a search of NDOC's Nevada

16   Offender Tracking Information System (NOTIS) where all inmate grievances are electronically

17   stored. (Doc. # 26 Ex. B at ¶ 6.)  The search revealed that Plaintiff did not file any grievances

18   during this time. (Doc. # 26 Ex.  B at ¶ 6, Attachment 1, ¶ 7.)

19         Plaintiff does not dispute that he failed to exhaust his administrative remedies.  (Doc.

20   # 29 at 2.)  Instead, Plaintiff argues: (A) the court should "find [§ 1997e] to be burdensome and

21   futile given the specific facts of this case"; (2)  the language of AR 740 is unconstitutionally

22   vague; and (3) in the event the court determines Plaintiff failed to exhaust his administrative

23   remedies, the court should "allow him to remove this complaint and the state law claims to

24   State court."  (*Id.* at 2-5.)

25         **A.     Exhaustion Requirement**

26         Plaintiff's request that the court disregard § 1997e because it is "burdensome and futile"

27   is not well taken.  The PLRA is unquestionably clear: an inmate may not file suit in federal

28                                        4

court until he exhausts all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion is *mandatory*. *See Booth v. Churner*, 532 U.S. 731, 739, 741 (2001). *Booth* confirms that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible. *Id*. at 739. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Woodford v. Ngo*, 548 U.S. 81, 100 (2006) (emphasis in original).

Nevertheless, Plaintiff maintains that it is unreasonable to require filing a grievance for an event that already occurred, and which could not be retroactively prevented. (Doc. # 29 at 3.) This argument is also unavailing. While it may be true that Defendants cannot undo the events of which Plaintiff complains, that is necessarily the case with many inmate grievances. The Supreme Court has been instructive in this regard:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might 'filter out some frivolous claims.' And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 530 (2002) (internal citations omitted). "It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option." *Id.* (citation omitted).

Plaintiff misapplies the Supreme Court's opinion in *Woodford v. Ngo* to support his argument. (Doc. # 29 at 3.) The take-away from *Woodford* is that "proper exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84. The Supreme Court emphasized:

> [t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the

1    prison grievance system will have little incentive to comply with the system's
     procedural rules unless noncompliance carries a sanction...

2    *Id*. at 95.  Therefore, Plaintiff was required to comply with the prison's grievance procedures

3    to achieve proper exhaustion under the PLRA.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007);

4    *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  Plaintiff undeniably failed to do so.

5    Plaintiff's reliance on *Griffin v. Arpaio* is similarly misplaced.  Plaintiff relies on the

6    Ninth Circuit's statement that "[t]he primary purpose of a grievance is to alert the prison to a

7    problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d

8    at 1120 (citation omitted).  Plaintiff uses this statement out of context to reason that the

9    violations report put Defendants on notice of the incident, relieving Plaintiff of the obligation

10   to fully exhaust his claims.  *Griffin* involved an inmate who had actually utilized the prison's

11   grievance procedure. *Griffin*, 557 F.3d at 1120.  The Ninth Circuit found that while Griffin did

12   not have to allege the precise legal theory to be advanced, he still failed to properly exhaust

13   because he did not provide sufficient information *in his grievances* so that prison staff could

14   address and respond to the situation.  *Id*.  The Court was not addressing a situation where an

15   inmate wholly failed to utilize the grievance system, and surely did not hold that generally

16   putting defendants on notice of complaints satisfies the exhaustion requirement.

17   To the extent Plaintiff is asserting that the court should apply an exception to the

18   exhaustion requirement under these circumstances, the Ninth Circuit discussed possible

19   exceptions to the PLRA's exhaustion requirement in *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir.

20   2010). These include: the unavailability of administrative procedures, obstruction of attempts

21   to exhaust, and preventing exhaustion by failing to follow grievance procedures.  *Id*.  (citation

22   omitted).  None of these exceptions are applicable here.  Plaintiff has not made any argument

23   that the grievance system was unavailable to him.  He does not argue that NDOC officials

24   obstructed his attempts to exhaust. Nor does he assert that he was prevented from exhausting

25   because procedures for grievances were not followed.  Plaintiff has simply not asserted that any

26   recognized exception to the exhaustion requirement applies.

27   ///

28

6

1    Finally, Plaintiff argues that he is somehow relieved of the duty to exhaust because

2  exhaustion is an affirmative defense to be proven by the defense.  (Doc. # 29 at 2.)  This

3  argument is ineffective.  While Plaintiff is correct that exhaustion is an affirmative defense, and

4  it must be raised and proven by the defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007),

5  Defendants have properly raised the affirmative defense by way of an unenumerated 12(b)(6)

6  motion, and have demonstrated that Plaintiff never filed a grievance while incarcerated by

7  NDOC.  Plaintiff has produced no evidence to the contrary.

8    **B.    AR 740**

9    Plaintiff argues that because he is a layperson, and not educated in legal jargon, he does

10  not understand the regulation governing inmate grievances.  (Doc. # 29 at 3-4.)  Plaintiff's

11  argument that AR 740 is unconstitutionally vague is unconvincing.

12    Generally, a regulation is void for vagueness "if it fails to give adequate notice to people

13  of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

14  discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989)

15  (citation omitted).

16    Preliminarily, the court is doubtful that this administrative regulation can be declared

17  void for vagueness because AR 740 does not proscribe any conduct, and is not penal in nature.

18  *See Skilling v. United States*, --- U.S. ---, ---, 130 S.Ct. 2896, 2927-2928 (2010) (citation

19  omitted)(void for vagueness doctrine applied to penal statute); *see also Anderson v. Morrow*,

20  371 F.3d 1027, 1031 (9th Cir. 2004) (citations omitted) ("A statute is void for vagueness if it

21  fails to 'define the criminal offense with sufficient definiteness that ordinary people can

22  understand what conduct is prohibited and in a manner that does not encourage arbitrary or

23  discriminatory enforcement.'"*).

24    Plaintiff relies on *Silvar v. Eighth Judicial Dist. Court ex rel. County of Clark*, 122

25  Nev. 289, 293, 129 P.3d 682, 684-85 (Nev. 2006), to support his argument that AR 740 is

26  unconstitutionally vague.  (Doc. # 29 at 3.)  *Silvar* involved the application of the void for

27  vagueness doctrine to Clark County's prostitution loitering ordinance, and the Nevada Supreme

28

1   Court pointed out that the doctrine focuses on the requirement that citizens be given notice of

2   prohibited conduct.  *Id*. at 291, 293 ("Without adequate notice, citizens would be frustrated

3   in their attempts to conform their conduct to the contours of the statute.").  AR 740 does not

4   proscribe conduct, but provides inmates with detailed instructions on how to utilize the

5   prison's grievance procedure.

6       Even if the court determined the void for vagueness doctrine was applicable, the court

7   concludes that AR 740 is not vague, and Plaintiff's argument is without merit.  AR 740.01.1.2.1,

8   governing grievance issues, provides:

9       Inmates may use the Inmate Grievance Procedure to resolve addressable inmate
        claims including, but not limited to personal property, property damage,
10      disciplinary appeals, personal injuries, any other tort claim or civil rights claim
        relating to conditions of institutional life.

11  The regulation gives adequate notice of the types of claims for which an inmate may file a

12  grievance.  It has been this court's experience in nearly fifteen years of handling inmate

13  litigation that inmate plaintiffs understand the meaning of this section of AR 740 with great

14  acuity.  Plaintiff's suggestion that a person of ordinary intelligence cannot understand the

15  meaning of "civil rights" or "conditions of institutional life" is uncompelling.

16      Plaintiff also argues that AR 740 fails to provide a remedy for his unique situation. (Doc.

17  # 29 at 3.)  Specifically, he argues that he should be excused from the exhaustion requirement

18  because he is seeking monetary damages for an incident that already occurred, could not be

19  retroactively prevented, and was not likely to reoccur.  This argument was explicitly rejected

20  by the Supreme Court in *Booth v. Churner*. *Booth v. Churner*, 532 U.S. 731, 741 (2001)

21  ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through

22  administrative procedures.").  In addition*,* in *Porter v. Nussle*, 534 U.S. 516 (2002), the

23  Supreme Court squarely held that "§1997e(a)'s exhaustion requirement applies to all prisoners

24  seeking redress for prison circumstances or occurrences." *Porter*, 534 U.S. at  520.  The

25  Supreme Court rejected the "single occurrence, prevailing circumstance dichotomy" in *Porter*.

26  *Id. at* 531.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

27  whether they involve general circumstances or particular episodes, and whether they allege

28

8

1    excessive force or some other wrong." *Id.* at 523 (citation omitted).

2        **C.    Request for Removal**

3        Finally, as to Plaintiff's request that the court "allow him to remove his complaint to

4    state court," it appears Plaintiff may be confused about the removal procedure.  28 U.S.C. §

5    1441, *et. seq.,* governs the removal of an action.  A defendant may remove an action brought

6    in state court over which the United States District Court has original jurisdiction to federal

7    court.  28 U.S.C. § 1441(a).  Only defendants may remove a case, and removal is only

8    accomplished from state to federal court.  The removal process is not applicable here because

9    Plaintiff initiated this action in federal court.

10        Instead of removal, it appears Plaintiff intended to ask the court to dismiss the federal

11    claims and remand the state law claims to the state court.[2]  The court is recommending

12    dismissal of all claims without prejudice as a result of Plaintiff's failure to exhaust his

13    administrative remedies.  The litigation strategy Plaintiff devises after dismissal is entirely

14    within Plaintiff's purview.  Therefore, the court should dismiss Plaintiff's claims, leaving it up

15    to Plaintiff to determine whether he can permissibly re-file any of his claims in federal court,

16    or alternatively, in state court.

17
18                            **III. RECOMMENDATION**

19        **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

20    **GRANTING** Defendants' Motion to Dismiss (Doc. #26) without prejudice.

        DATED: June 16, 2011.

21
22
23
24    _____
        UNITED STATES MAGISTRATE JUDGE
25

26        [2]    Plaintiff relies on a Nevada case, *Richardson Const., Inc. v. Clark County School Dist.*, 123 Nev.
27    61, 156 P.3d 21 (Nev.  2007), which simply mentions in a footnote that the United States District Court declined
      to adjudicate and remanded the plaintiff's state law claims. *See Richardson*, 123 Nev.  61, 156 P.3d at n.3.

28                                            9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28